**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: May 27, 2010**

J. Vincent Aug, Jr.
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sandra L. Marshall
Debtor

Case No. 09-10657
Chapter 7 (Judge Aug)

Sandra L. Marshall
Plaintiff

Adv. Proc. 09-1106

v.

The Student Loan Corporation
Defendant

ORDER RE: DISCHARGEABILITY OF STUDENT LOAN DEBT

    This matter is before the Court on the Plaintiff-Debtor's Complaint to Determine Dischargeability of Debt (Doc. 1), Defendant-Assignee Educational Credit Management Corporation's ["ECMC"] Answer (Doc. 3), and the Joint Preliminary Pretrial Statement (Doc. 6). A trial was held on May 18, 2010.

    The Debtor is attempting to discharge approximately $33,000 of student loan debt owed to ECMC[1] because excepting this student loan from discharge will cause an undue hardship pursuant to 11 U.S.C. §523(a)(8). ECMC contends that the Debtor can afford to make payments

---

[1] The Debtor's complaint names The Student Loan Corporation as the Defendant. ECMC filed an answer as the assignee of the student loan debt owed by Debtor. It appears that ECMC is the current holder of the student loan debt and Debtor has not contested ECMC's appearance in this matter.

under the Income Based Repayment Plan and that she has not met the standard for excepting this debt from discharge adopted in *Oyler v. Education Credit Management Corporation*, 397 F.3d 382 (6th Cir. 2005).

A discharge under 11 U.S.C. §727 does not discharge a debtor from a debt for an educational loan made, insured, or guaranteed by a governmental unit unless excepting the debt from discharge would impose an undue hardship on the debtor or the debtor's dependants. 11 U.S.C. §528(a)(8). In order to determine whether excepting a student loan debt from discharge would pose an undue hardship on the debtor or the debtor's dependants, the Sixth Circuit has adopted the three-part test set forth in *Brunner v. New York State Higher Education Services Corporation*, 831 F.2d 395, 396 (2d Cir. 1987). *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2005). The *Brunner* test requires the debtor to prove, by a preponderance of the evidence, each of the following elements:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist which suggest that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Id.*(citing *In re Brunner*, 831 F.3d at 396).

The Debtor paid for her online education at the University of Phoenix through personal finances, tuition reimbursement from her employer, and this student loan.[2] Debtor's transcript from the University of Phoenix shows that from March 2003 through September 2006 she completed 81 credit hours toward her Bachelor's of Business Administration degree.

The Debtor is the primary caregiver for her disabled husband, who requires care 24 hours a day. Although the Debtor is physically able to work, she has been unable to find work since she was terminated from her last job in February 2009. Even if the Debtor were to find work, she is uncertain whether any job would offer the flexibility she needs to take care of her husband or the salary required to provide him with outside nursing care.

The Debtor and her husband, Michael Marshall, have been married since 1970. They have two adult children. The Debtor is 56 years old. Mr. Marshall is 57 years old and has not worked since 1995 when he was found to be permanently disabled by the Social Security Administration. The Debtor and Mr. Marshall's sole source of income is Mr. Marshall's

---

[2] This is a consolidation loan evidenced by a note executed by the Debtor on June 30, 2007 with an initial disbursement of $28,102.02 on July 3, 2007. It is unclear from the record when the underlying loans were taken out.

disability payment of $1424 (net) monthly.

Mr. Marshall testified as to his mental disability. Mr. Marshall was diagnosed in 1979 with bipolar disorder. His disorder is rapid cycling, which involves alternating periods of severe depression and mania within a moment's time. His bipolar disorder is treated with both medicine and therapy. His doctors have told him that there is no cure for his bipolar disorder and he must continue to take his medication for the rest of his life. He testified that there are serious consequences when he does not take his medication, alluding to incidents with law enforcement the last time he was unable to take his medication because of the cost.

Mr. Marshall also testified as to his physical ailments. Beginning in 2002, Mr. Marshall had two surgeries on his neck - the first to remove a bulging disc, the second to repair his vocal chords which were damaged during the first surgery. He has experienced lower back pain since 2005, along with severe pain in his neck, shoulders and arms. He had knee replacement surgery in 2009, and has chronic bronchitis. He has been in the hospital five times in the last seven years. Mr. Marshall provided an extensive list of medications he is on for both his mental disability and physical pain. Mr. Marshall testified that his doctor advised him that after one year of his knee replacement surgery, he should be walking "better," but not ever "normal."

Finally, Mr. Marshall testified as to his physical limitations. He cannot lift objects. He needs assistance getting up and sitting down. He needs help bathing and using the toilet. He is unable to drive. The Debtor is the provider of his nursing care, providing care to him 24 hours a day, in addition to daily household chores. Mr. Marshall does not currently qualify for government assistance for his daily care. The Debtor testified that she also dresses him, feeds him, drives him to appointments, and administers his medication.

The Debtor testified as to her work history. She dropped out of high school in 1970 when she became pregnant with her son and married Mr. Marshall. From 1970 to 1988, the Debtor worked as a cashier. In 1988, she obtained her GED. From 1988 to 1995, the Debtor's family moved several times due to Mr. Marshall's work as a plastics engineer and the Debtor worked in various customer service related jobs. In 1995, the Debtor's family moved back to Cincinnati. It was at this time Mr. Marshall was found to be permanently disabled and Debtor began work at Time Warner Cable. She worked at Time Warner for the next 12 years, with progressive responsibility and increasing salary. She began taking classes online from the University of Phoenix in early 2003.

While taking online classes from the University of Phoenix, the Debtor testified that she was also working full-time and providing care to her husband. The Debtor ended her studies in early 2007 because she was demoted at Time Warner, which left her making less money, and because she needed more time to take care of Mr. Marshall, whose condition was declining.

As a result of the demotion and other issues relating to the merger of Time Warner and AOL, the Debtor left Time Warner in mid-2007. She briefly worked at Frisch's restaurant in their management training program. In September 2007, she started work as a manager at the League for Animal Welfare. She worked at this job until February 2009. The termination of her

employment does not seem to be related to her job performance, and she received a small severance. She received unemployment benefits starting in March 2009 through April 2010, when they finally ran out. She is currently unemployed.

From March 2009 through February 2010, the Debtor applied for over 100 positions in the management field in the Cincinnati area. She did not receive any job offers. Needing help both financially and with the care of her husband, the Debtor and Mr. Marshall moved in with their daughter and son-in-law in Tupelo, Mississippi in March 2010. Since moving to Tupelo, the Debtor has applied for over 50 positions. She has not received any job offers.

The Debtor's Amended Schedules I and J reflect the Marshall's current income and expenses. ECMC did not object to any of the expenses. They currently live on Mr. Marshall's disability payment of $1442 per month. Even without a rent payment, the Debtor is faced with a monthly net income of negative $404.14. The largest expense in their budget - $580 - is for uninsured medical expenses. The Debtor testified that they have ongoing medical bills, and sometimes pay as little as $20 per month on each bill to keep these creditors at bay. Their budget consists of only necessities and contains no extravagant items.

**Income Based Repayment Plan**

ECMC contends that the Debtor can afford to make payments on her student loan obligation through the Income Based Repayment Plan ["IBR"]. The IBR is a new repayment plan similar to the Income Contingent Repayment Plan ["ICR"]. Under the IBR, the monthly payment made on the student loan is based on the amount of income and family size. Unlike the ICR, the IBR does not take into consideration the amount of the student loan debt. After the first three years, unpaid interest capitalizes under the IBR. The student loan debt will be cancelled after payments under the IBR for 25 years. As with the ICR, any debt forgiven under the IBR will be taxed to the borrower as income.

Based on the Debtor's current income and family size, her current monthly payment under the IBR would be $0.

**Minimal Standard of Living**

The first prong of the *Brunner* test requires the Debtor to show that she cannot maintain a minimal standard of living based on current income and expenses if she is forced to repay her student loans. A minimal standard of living includes shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation. *In re Myers*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002). The essence of the minimal standard of living requirement "is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of . . . student loan creditor(s)." *Mitcham v. U.S. Dep't of Educ. (In re Mitcham),* 293 B.R. 138, 144 (Bankr. N.D. Ohio 2003)(citing *Rice v. United States (In re Rice),* 78 F.3d 1144, 1149 (6th Cir. 1996)).

Currently, the Debtor and her husband rely on their daughter and son-in-law for their

housing. Even with this help, the Debtor's expenses greatly outweigh her income because of her husband's medical expenses. Their bare bones budget leaves them with a negative cash flow every month. The Debtor is not allocating funds to the detriment of her student loan creditor. The Debtor does not even have the funds to support her and her husband's necessities. The Debtor cannot maintain a minimal standard of living even without the additional burden of paying her student loan debt.

ECMC contends that since her payment under the IBR would be $0, there is zero impact on her budget. Therefore, she can enroll in the IBR, have no monthly payment, and still maintain her current budget. We disagree. There is more to student loan debt than merely the monthly payment to be made. Even if the Debtor was not required to make any payment under the IBR, the debt is still hanging over her head, it will affect her credit and cause a "psychological and emotional toll." *In re Larson* 426 B.R. 782, 794 (Bankr. N.D. Ill.)(discussing effects of making no payments under the ICR)(citing *In re Durrani,* 311 B.R. 496, 507-08 (Bankr. N.D. Ill. 2004)). At the end of the 25-year repayment period, if the debt is cancelled, there are tax consequences for the Debtor. *In re Barrett*, 487 F.3d. 353, 364 (6th Cir. 2007). The Debtor would be 81 years old at the end of the 25-year repayment period, and likely still on a fixed income. The tax consequences for someone in that position could be devastating. The existence of the IBR cannot "obliterate" the Code's policy of a "fresh start." *In re Durrani*, 311 B.R. at 507; *see also In re Barrett*, 487 F.3d. at 364.

As counsel for the Debtor argued at trial, ECMC would have this Court create a fourth prong to the *Brunner* test - the IBR prong. Under ECMC's legal theory, if a debtor can qualify for the ICR or IBR with no monthly payment, then there would never be an undue hardship on the debtor and student loans would never be discharged. Although the IBR is a new program, the ICR was implemented in 1994. *In re Barrett*, 487 F.3d at 364. Even with the ICR and IBR making student loan debt more manageable for some debtors, Congress left the §523(a)(8) "undue hardship" language intact with the sweeping reform of the Code in 2005. *Id*. If Congress had wanted to repeal "undue hardship" because of any type of income based or income contingent plan, it could have done so. *Id*. The *Brunner* test and the §523(a)(8) "undue hardship" language both remain intact. The existence of the IBR does not change the analysis.

We find that based on the Debtor's current income and expenses, she cannot maintain a minimal standard of living and that she has satisfied the first prong of the *Brunner* test.

**Additional Circumstances**

The second prong of the *Brunner* test requires this Court to find that additional circumstances exist that would persist for a significant portion of the repayment period. To satisfy this prong, the circumstance must be indicative of a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *In re Oyler*, 397 F.3d 382, 386 (6th Cir. 2005) (citing *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993)). The circumstances may include illness, disability, lack of job skills, or the existence of a large number of dependents. *Id*. Finally, the circumstances "must be beyond the debtor's control, not borne of free choice." *Id*. The Debtor contends that her husband's declining health, his need for 24-hour care, and their medical

bills are the additional circumstances which would satisfy the second prong of *Brunner*.

ECMC contends that there is great uncertainty which weighs against the Debtor - the uncertainty of her husband's condition, the ability to finish her degree, and opportunity to get a job in the future. ECMC contends that a change in any of these factors may present an opportunity for the Debtor to repay her student loan obligation. ECMC also contends that Mr. Marshall's testimony as to his medical conditions alone doesn't suffice and that the Debtor needs to provide corroborating medical testimony.

The Sixth Circuit has held that corroborating expert medical testimony is not required when the "additional circumstance" of the *Brunner* test is premised on debtor's health. *In re Barrett*, 487 F.3d at 360. Other forms of corroborating evidence may suffice. *Id*. In this case, it is not the Debtor's health in question, but her husband's. Both Mr. Marshall and the Debtor testified about Mr. Marshall's physical limitations, diagnosis of mental illness, and how his health their effects daily life and the Debtor's ability to work outside the home. They both testified that he needs constant care, and it is the Debtor who provides his care. They also testified that his condition has been getting worse in recent years. Mr. Marshall provided an extensive list of medications he is on for both his mental disability and physical pain. ECMC did not offer any evidence to contradict this testimony. ECMC also did not challenge Mr. Marshall's testimony regarding his physical limitations or the Debtor's daily responsibility for his care. We find both the Debtor's and Mr. Marshall's testimony to be credible.

ECMC argues that the Debtor can complete her degree and will eventually find a well-paying job. Given the Debtor's present situation, there seems little likelihood that the Debtor will have the money or the time to complete her degree. She had already stopped her studies because of the additional care her husband needed as his physical ailments mounted. Now that he is in need of full-time nursing care, provided solely by the Debtor, and a budget that provides for no unnecessary expenses, there is little chance of the Debtor finishing her degree.

Mr. Marshall's physical and mental impairments and need for constant care are the additional circumstances which the Debtor faces that will persist for a significant portion of the repayment period.

**Good Faith Effort**

The last prong of the *Brunner* test requires the Debtor to prove that she has made a good faith effort to repay her student loans. The Debtor contends that she made payments on her loan and that her refusal to participate in the IBR is reasonable because of her husband's ongoing medical expenses and the potential tax consequences. ECMC contends that her refusal to participate in the IBR is probative of her lack of intent to pay her loans. ECMC also challenges the payments the Debtor alleges she has made on the student loan.

At the hearing, the Debtor alleged she made a total of 17 payments on the student loan. Her only evidence was a summary of payments she created from her checkbook registers. Based on ECMC's payment history, which was admitted into evidence as Defendant's Exhibit "A", the

Debtor has made three payments on her loan, on August 31, 2007, October 8, 2007, and December 4, 2007. The first payment on this loan was due on August 17, 2007. Her first payment was promptly made. Although not discussed in detail at trial, ECMC's payment history also reflects that the Debtor has been in deferment on this loan from October 18, 2007 through September 13, 2009. It appears from ECMC's payment history that the Debtor made most, if not all, of the payments required of her before the deferment period began.

Although the Debtor's refusal to participate in the IBR may be probative to her intent to repay her loan, it is not a per se indication of lack of good faith. *See In re Barrett*, 487 F.3d at 364 (rejecting the per se rule requiring enrollment in ICR to satisfy third prong of the *Brunner* test). The Debtor testified that she is fearful that if she participates in the IBR and is then able to get a part-time job to help with expenses, a monthly payment would be triggered and she would still be unable to pay household expenses. The Debtor stated that every penny they make is needed for medical expenses. The Debtor also recognizes that unpaid interest capitalizes under the IBR and that the amount forgiven after 25 years would be taxed as income, when the Debtor will be 81 years old. In light of the continuing medical expenses incurred by Debtor's husband and the potential tax consequences of the IBR, we find that the Debtor's decision to not enroll in the IBR is reasonable and not grounds for finding bad faith.

Based on the payments made by the Debtor on her student loan, and because her decision to not enroll in the IBR is reasonable, we find that the Debtor has made a good faith effort to repay her student loans.

The Debtor has proven, by a preponderance of the evidence, all prongs of the *Brunner* test for undue hardship. Excepting her student loan debt from discharge would pose an undue hardship on the Debtor pursuant to §523(a)(8).

Accordingly, the Debtor is entitled to judgment in her favor. Her debt to ECMC is not excepted from discharge under §523(a)(8).

IT IS SO ORDERED.

Distribution List:

Debtor
Paul J. Minnillo, Esq.
Jeffrey Rosenstiel, Esq.

###